UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOYCE WHITAKER,

    Plaintiff,

v.                                                  Case No. 12-C-1006

MILWAUKEE COUNTY,

    Defendant.

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION
## FOR SUMMARY JUDGMENT

### INTRODUCTION

Joyce Whitaker ("Whitaker") believes that she was terminated because of her disability. She originally named the State of Wisconsin Department of Health Services ("Wisconsin DHS") and Milwaukee County DHS as defendants in her action under Title I of the Americans with Disabilities Act ("ADA"). This Court dismissed Whitaker's claims against the Wisconsin DHS because private individuals cannot recover money damages from a state in Title I ADA claims. (*See* Doc. 15.) Unfortunately for Whitaker, this leaves her without a proper defendant. Pursuant to a somewhat unique arrangement mandated by state statute, while Whitaker remained a Milwaukee County employee in name, the State of Wisconsin supervised Whitaker during the relevant time frame and exclusively made the decision to terminate her rather than transferring her or extending her leave of absence. Milwaukee County did not supervise Whitaker and was not involved in these decisions; therefore, her claim against Milwaukee County fails as a matter of law. For this reason, Milwaukee County respectfully moves for summary judgment dismissing Whitaker's Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## STATEMENT OF THE FACTS

Whitaker was hired by Milwaukee County as a Corrections Officer in July 2001. (PFOF ¶ 1.) In May 2005, Whitaker sustained a work-related back injury. (PFOF ¶ 2.) The resulting permanent restrictions left her unable to work as a Corrections Officer, so Milwaukee County accommodated her restrictions by transferring her to an Energy Assistance Specialist position. (PFOF ¶¶ 3-4.) Whitaker remained in that position until September 2008, when she accepted an Economic Support Specialist position. (PFOF ¶¶ 5-6.)

On May 29, 2009, 2009 WI Act 15 ("Act 15") became law in the State of Wisconsin. (PFOF ¶ 7.) Pursuant to Act 15, the State of Wisconsin assumed responsibility for the administration of Income Maintenance ("IM") programs in Milwaukee County. (PFOF ¶ 8.) Among the statutory provisions effectuated by 2009 WI Act 15 was Wis. Stat. § 49.825, "Department administration in Milwaukee County." (PFOF ¶ 9.) Wis. Stat. § 49.825, which took effect on May 29, 2009, provided that the State of Wisconsin would create a unit of state government to administer several welfare programs in Milwaukee County. (PFOF ¶¶ 10-11.) The statute set forth the division of responsibility for employment-related functions between the Wisconsin DHS and Milwaukee County, stating that the Wisconsin DHS had the authority to "hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, discipline, and adjust grievances with respect to, and state supervisory employees may supervise, county employees performing services under this section for the unit." (PFOF ¶¶ 12-13.) The statute also indicated that the Wisconsin DHS could "unilaterally resolve" disputes between the Wisconsin DHS and county employee unions regarding hours or conditions of employment. (PFOF ¶ 14.)

The provisions of Wis. Stat. § 49.825, as established by Act 15, applied to Whitaker on May 29, 2009 and throughout the remainder of her employment as an Economic Support

2

Specialist. (PFOF ¶ 15.) By January 1, 2010, the Wisconsin DHS had, by its own admission, assumed full responsibility for Milwaukee County IM activities and for ADA compliance. (PFOF ¶¶ 38-42) Once Act 15 took effect, Whitaker's supervisors, including Mario Reed and Vanessa Robertson, became Wisconsin DHS employees. (PFOF ¶ 16.) When Whitaker requested a work accommodation in January 2010, it was approved by a Wisconsin DHS employee, David Lopez. (PFOF ¶ 17.) Whitaker's intermittent FMLA leave request in May 2010 was approved by Nicole Teasley, a Wisconsin DHS employee. (PFOF ¶ 18.) Teasley also approved Whitaker's request for continuous FMLA between August and October 2010. (PFOF ¶ 19.)

In an October 25, 2010 letter, Teasley informed Whitaker that while her FMLA leave was exhausted as of October 18, 2010, she was approved for a leave of absence through November 5, 2010. (PFOF ¶ 20.) In a separate letter also dated October 25, 2010, Robertson directed Whitaker to return to work on November 8, 2010. (PFOF ¶ 21.) Though Whitaker did not return to work on November 8, 2010, she did file a disability discrimination charge with the Milwaukee Area Office of the EEOC on November 3, 2010. (PFOF ¶¶ 22, 29.) Whitaker's EEOC charge named "Milwaukee County DHS" and "State of Wisconsin Dept. of Health Services" as discriminating entities. (PFOF ¶ 23.) The EEOC charge stated that Whitaker was supervised by the State of Wisconsin Department of Health Services and that she believed she was "discharged on the basis of [her] disability." (PFOF ¶¶ 24-25.) Whitaker indicated on the charge that the earliest date of discrimination was October 25, 2010, and she did not check the box to denote a "Continuing Action." (PFOF ¶¶ 26-27.) The charge made no mention of any failure to accommodate Whitaker's disability, retaliation, or other allegedly illegal actions aside from the fact of her termination. (PFOF ¶ 28.)

3

In a letter dated November 15, 2010, Robertson informed Whitaker that DHS intended to medically separate her from employment. (PFOF ¶ 30.) The letter stated that "[w]hen an employee has exhausted all leave entitlements and remains unable to work, the Department of Health Services is granted authority under s. 230.37, Wis. Stats., to medically separate the employee from state service. . . . termination of your employment with the State of Wisconsin may be necessary." (PFOF ¶ 31.) The letter also set a November 18, 2010 meeting to "discuss this pending action." (PFOF ¶ 32.) Whitaker, a union representative, Teasley, and Robertson attended a meeting on November 18, 2010. (PFOF ¶ 33.) At this meeting, Whitaker was informed of her termination. (PFOF ¶ 34.) Subsequent to this meeting, Eli Soto, a Wisconsin DHS employee, mailed Whitaker a letter dated November 30, 2010 informing her that her employment with Wisconsin DHS was "being terminated effective November 30, 2010 for medical reasons." (PFOF ¶ 35.) Whitaker filed a grievance regarding her termination with Wisconsin DHS, and not with Milwaukee County. (PFOF ¶ 36.) On or about December 15, 2010, this grievance was denied. (PFOF ¶ 37.)

The following week, Attorney Lara M. Herman of the Office of Legal Counsel, Wisconsin Department of Health Services sent a position statement with attached exhibits to the Milwaukee Area Office of the EEOC. (PFOF ¶ 38.) Attorney Herman's EEOC submission indicated that "On or about May 29, 2009, DHS (the State) began to take over the Milwaukee County IM programs pursuant to 2009 Wisconsin Act 15." (PFOF ¶ 39.) It also stated that "[o]n January 1, 2010, DHS assumed full responsibility of the Milwaukee County IM activities," and that "[w]hen DHS took over the supervision of MilES county employees, DHS took over the authority to hire, and fire MilES employees, including Ms. Whitaker." (PFOF ¶¶ 40-41.) Additionally, Attorney Herman's submission admitted that "as of January 1, 2010, DHS assumed

4

total responsibility for any accommodation matters under the Americans with Disabilities Act for county employees in the MilES unit, including Ms. Whitaker." (PFOF ¶ 42.) On July 26, 2012, the Milwaukee Area Office of the EEOC issued a "right to sue" letter to Whitaker regarding EEOC Charge No. 443-2011-00222 pertaining only to the charge against the Wisconsin DHS. (PFOF ¶ 43.) This letter indicated that the EEOC found reasonable cause to believe that the Wisconsin DHS engaged in discriminatory behavior. (PFOF ¶ 44.) On May 2, 2013, James M. Carroll, Principal Assistant Corporation Counsel for Milwaukee County, made a written request to the Milwaukee Area Office of the EEOC for its probable cause determination regarding Milwaukee County DHS. (PFOF ¶ 52.) On May 8, 2013, the Milwaukee Area Office of the EEOC issued a "Dismissal and Notice of Rights" letter to Whitaker stating that the EEOC "is unable to conclude that the information obtained establishes violations of the statutes" regarding Milwaukee County DHS and informing her of her right to sue within ninety (90) days. (PFOF ¶ 53.)

On October 3, 2012, Joyce Whitaker filed a lawsuit in the Eastern District of Wisconsin in which she alleged disability discrimination against "Milwaukee County DHS" and "State of Wisconsin Dept. of Health Services." (PFOF ¶ 45.) Defendant State of Wisconsin Dept. of Health Services timely moved to dismiss Whitaker's complaint. (PFOF ¶ 46.) Milwaukee County DHS timely answered Whitaker's complaint. (PFOF ¶ 47.) On January 30, 2013, the Court granted the State of Wisconsin's motion to dismiss. (PFOF ¶ 48.) Whitaker filed an amended complaint against Milwaukee County DHS on March 28, 2013. (PFOF ¶ 49.) The amended complaint alleges Milwaukee County DHS intentionally discriminated against Whitaker by denying her an extended medical leave, denying her a position with the job duties she was qualified to perform, failing to reasonably accommodate her disability, and by

5

terminating her employment. (PFOF ¶ 50.) Milwaukee County DHS timely answered Whitaker's amended complaint. (PFOF ¶ 51.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56. No special summary judgment standard applies to employment discrimination cases. *Majors v. General Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). A court will grant summary judgment if the opposing party cannot "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. (citations omitted).

## ARGUMENT

**I. The Scope of Whitaker's Action is Limited to Her Discriminatory Discharge Allegation**

Whitaker's amended complaint sets forth allegations of failure to accommodate her disability, some of which date back to 2006. These allegations are properly excluded from her present cause of action for two related reasons. First, Whitaker's October 2010 EEOC charge makes no mention of discrimination prior to October 25, 2010, refers only to her termination, and does not indicate a "continuing violation." Second, any allegations other than Whitaker's claim of discriminatory termination fall outside the applicable statute of limitation and thus are not properly considered in this case.

A. <u>Whitaker's EEOC Charge Limits the Scope of This Action to Her Alleged Discriminatory Discharge</u>

The ADA has adopted the administrative procedures set forth in Title VII, 42 U.S.C. § 2000e-5. *See* 42 U.S.C. § 12117. A Title I ADA plaintiff in Wisconsin must file an administrative charge with the EEOC within 300 days of the alleged unlawful employment

6

practice. *See Weinandt v. Kraft Pizza Co.*, 217 F. Supp.2d 923 (E.D. Wis. Aug. 23, 2002) (citing 42 U.S.C. § 2000e-5(e)). An EEOC charge must include any claim that the plaintiff wishes to pursue in federal court. *See McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996) ("[g]enerally, a Title VII plaintiff may bring only those claims that were included in her EEOC charge"). This requirement serves two purposes: encouraging dispute resolution and warning the employer of the alleged discriminatory conduct. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citation omitted). "[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Id*.

A plaintiff may be allowed to pursue claims not explicitly stated in an EEOC charge when such claims fall within the "scope of the charges contained in the EEOC complaint." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 710 (7th Cir. 2000). To determine if this is the case, courts look for a "reasonable relationship" between the allegations in the EEOC charge and the additional claims the plaintiff wishes to pursue. *Cheek*, 31 F.3d at 500. Such a reasonable relationship exists only when the EEOC charge and the complaint "describe the *same conduct* and implicate the *same individuals*." *Id*. at 501 (emphases added).

It is established precedent in this jurisdiction that failure to accommodate or retaliation charges are not reasonably related to discrimination charges in the ADA context. *See Swearnigen-El v. Cook Cnty. Sheriff's Dept.*, 602 F.3d 852, 864-65 (7th Cir. 2010) ("Normally, retaliation and discrimination charges are not considered 'like or reasonably related' to one another."); *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 897 (7th Cir. 1999) ("A claim for failure to accommodate is separate and distinct under the ADA from one of disparate treatment because of a disability."); *Kaplan v. New Trier High School*, 2011 WL 2148936, at *3

7

(N.D. Ill. May 31, 2011) (failure to accommodate claim was beyond scope of EEOC charge alleging only disability discrimination). Whitaker's EEOC charge stated that her claim was based on her discharge. (PFOF ¶ 25.) Whitaker made no mention of any other allegedly discriminatory conduct. (PFOF ¶¶ 25-27.) She clearly indicated October 25, 2010 as the earliest date discrimination took place, and did not check the box labeled "Continuing Action." (PFOF ¶¶ 26-27.) She made no mention of any failure to accommodate her disability, retaliation, or other allegedly illegal actions *aside from* the fact of her termination. (PFOF ¶ 28.) For these reasons, the scope of Whitaker's amended complaint must be limited to allegations of discriminatory discharge.

> B. The Applicable Statute of Limitation Limits the Scope of This Action to Whitaker's Alleged Discriminatory Discharge

In Wisconsin an EEOC charge alleging violation of Title I of the ADA must be filed within 300 days of the alleged unlawful employment practice. *See Weinandt*, 217 F. Supp.2d at 923. As the preceding section establishes, Whitaker's November 3, 2010 EEOC charge pertained only to her allegations of discriminatory discharge. Any allegations of failure to accommodate or other violations related to her position as an Economic Support Specialist are thus time-barred by the 300 day limitation. Even if this Court finds that the failure to accommodate allegations in Whitaker's amended complaint are within the scope of her EEOC filing, the Court may only consider those events occurring on or after January 7, 2010—or 300 days prior to the filing of Whitaker's EEOC charge. In other words, even on Whitaker's best day, the scope of this case is limited to events that took place after Act 15 granted the Wisconsin DHS supervisory authority over her and after the Wisconsin DHS had, by its own admission,

assumed full responsibility for Milwaukee County IM programs, including ADA compliance matters. (PFOF ¶¶ 7-16, 40-42.)

## II. Milwaukee County is Not a Proper Defendant Because it Was Neither Involved in the Allegedly Discriminatory Decisions Nor Responsible for ADA Compliance

An ADA plaintiff may prove her case under either the direct or indirect method. *Dickerson v. Bd. of Tr. of Cmty College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) (citing *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000)). Under the direct method, she may rely on direct or circumstantial evidence. *Id*. (citations omitted). Direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004) (quoting *Rogers v. City of Chicago*, 320 F.3d. 748, 753 (7th Cir. 2003). Circumstantial evidence "allows a jury to infer intentional discrimination by the decision-maker." *Id*. Convincing "direct method" evidence of employment discrimination "must point directly to a discriminatory reason for the employer's action . . . and be directly related to the employment decision." *Teruggi v. CIT Group/Capital Fin., Inc.*, 709 F.3d 654, 660 (7th Cir. 2013) (quoting *Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1071 (7th Cir. 2012)). Alternatively, under the indirect method, the plaintiff must show that she is a person with a disability within the meaning of the ADA, is able to perform the job's essential functions with or without reasonable accommodation, and has "suffered from an adverse employment decision because of the disability." *Buie*, 366 F.3d at 503. (citing *Dvorak v. Mostardi Platt Assoc., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002). The plaintiff must also prove that similarly situated employees without a disability were treated more favorably. *Dickerson*, 657 F.3d at 601.

9

It is no accident that the cases cited in the preceding paragraph refer to employment *decisions*. These cases clearly support what may seem like an obvious proposition: that the ADA plaintiff's chance of success hinges on her ability to prove that an employer's *decision-making* process was colored by discriminatory animus. It follows that, when an employer is not involved in any allegedly discriminatory decisions, that employer cannot be liable under the ADA.[1] This is precisely the scenario presented by Whitaker's suit against Milwaukee County. Whitaker alleges that Milwaukee County denied her an extended medical leave, refused to transfer her to a different position, failed to reasonably accommodate her disability, and terminated her because of her disability. (PFOF ¶¶ 49-50.) Milwaukee County has already explained in a previous section of this brief why Whitaker's failure to extend medical leave/transfer/accommodate claims fall outside the scope of this lawsuit. That issue aside, all of her claims fail as a matter of law because Whitaker can present no evidence that Milwaukee County played any role in the relevant decision-making processes.

When Whitaker was terminated in November 2010, the Wisconsin DHS had been supervising her for nearly a year and a half. (PFOF ¶¶ 7-16.) In her EEOC charge, Whitaker admitted that she was supervised by the Wisconsin DHS. (PFOF ¶ 24.) Pursuant to the statutory provisions established by Act 15, the Wisconsin DHS possessed the authority to take all meaningful actions related to Whitaker's employment, including the authority to assign, transfer,

---

[1] Milwaukee County recognizes that the ADA prohibits employers from avoiding their obligations by "participating in a contractual or other arrangement that has the effect of subjecting a covered entity's . . . employee with a disability to . . . discrimination." 42 U.S.C. § 12112(b)(2). In the instant case, the relationship between Milwaukee County and the Wisconsin DHS regarding Income Maintenance employees like Whitaker—a relationship in which the Wisconsin DHS was admittedly solely responsible for ADA compliance—was mandated by Wisconsin state law. For this reason, the Plaintiff can present no evidence that Milwaukee County willingly or purposely attempted to evade its ADA duties, or that the Wisconsin DHS was an "agent" of Milwaukee County, as the amended complaint alleges. *See Eckles v. Consol. Rail Corp.*, 94 F.3d 1041, 1046 (while it is true that "covered entities cannot avoid their ADA duties by contractual manipulation," plaintiff presented no evidence that employer and union participated in a "contractual arrangement that has the effect of subjecting him to prohibited discrimination.").

and discharge her. (PFOF ¶ 13.) The Wisconsin DHS also, by its own admission, had assumed full responsibility for ADA compliance regarding Income Maintenance personnel (including Ms. Whitaker) no later than January 1, 2010. (PFOF ¶ 42.) The supervisor who communicated with Whitaker regarding her termination, Vanessa Robertson, was a Wisconsin DHS employee. (PFOF ¶ 16.) The person who had initially approved Whitaker's medical leave of absence, Nicole Teasley, was a Wisconsin DHS employee. (PFOF ¶¶ 18, 20) While Teasley and Robertson attended the November 18, 2010 meeting at which Whitaker was informed of her termination, no representatives of Milwaukee County were present. (PFOF ¶¶ 32-33.) The November 30, 2010 letter subsequently sent to Whitaker was from Eli Soto, a Wisconsin DHS employee. (PFOF ¶ 35.) When Whitaker grieved her termination, she did so to the Wisconsin DHS, not Milwaukee County. (PFOF ¶ 36.)

To overcome summary judgment, Whitaker "must present the court with evidence that, if believed by a trier of fact, would establish each of the elements of her claim." *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) (citing *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 748 (7th Cir. 2011)). Conclusory statements, unsupported by evidence, are insufficient to defeat summary judgment. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 540 (7th Cir. 2013). Whitaker cannot meet this burden. She has offered no evidence from which a trier of fact could reasonably conclude that Milwaukee County was involved in the decision to end her employment rather than transferring her or extending her leave of absence. Absent proof of Milwaukee County's role as a decision-maker, whether under the direct or indirect method of proof, her claim fails as a matter of law.

11

## CONCLUSION

For the foregoing reasons, Defendant Milwaukee County respectfully moves for summary judgment dismissing the Plaintiff's Amended Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Dated at Milwaukee, Wisconsin this 14th day of August, 2013.

                                        Milwaukee County Acting Corporation Counsel

                                        Mark A. Grady
                                        State Bar No: 1016796

                                        By /s/ James M. Carroll
                                             James M. Carroll
                                             Principal Assistant Corporation Counsel
                                             State Bar No: 1068910

**P.O. Mailing Address:**
Milwaukee County Courthouse
901 North Ninth Street, Room 303
Milwaukee WI 53233
414-278-4035
Fax: 414-223-1249
James.Carroll@milwcnty.com