# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JOYCE WHITAKER, | |
| Plaintiff, | Case No. 12-CV-1006-JPS |
| v. | |
| MILWAUKEE COUNTY, | |
| Defendant. | ORDER |

On October 3, 2012, plaintiff Joyce Whitaker ("Whitaker") filed a complaint naming Milwaukee County DHS and the State of Wisconsin Department of Health Services ("Wisconsin DHS") as defendants. (Docket #1). Whitaker's complaint alleges that defendants violated Title I of the Americans with Disabilities Act ("ADA") when they failed to accommodate her disability and discharged her. On December 26, 2012, defendant Wisconsin DHS filed a motion to dismiss, arguing that the State's immunity under the Eleventh Amendment to the United States Constitution bars Whitaker's action against it. (Docket #11). On January 30, 2012, this court granted the motion and dismissed Wisconsin DHS from the action. (Docket #15). On March 28, 2013, the parties stipulated that Whitaker may file an amended complaint; defendant Milwaukee County[1] filed an answer to the amended complaint. (Dockets #26, #28). Presently before the court are: Milwaukee County's motion for summary judgment, and Whitaker's expedited motion for leave to file a second amended complaint. (Dockets #33, #50). The motions are fully briefed and ready for adjudication.

---

[1]On April 22, 2013, the name of the defendant was changed from "Milwaukee County DHS" to "Milwaukee County." (April 22, 2013 Docket Entry).

1. Background Facts

    1.1 Whitaker's Employment History

Whitaker was hired by Milwaukee County as a Corrections Officer in July of 2001. Defendant's Proposed Finding of Fact ("Def. PFOF") (Dockets #35, #41) ¶ 1. On May 23, 2005, Whitaker sustained an injury while working as a Corrections Officer; this injury resulted in permanent restrictions that prevented her from performing the essential functions of the Corrections Officer position. Def. PFOF ¶¶ 2-3. In February of 2006, Milwaukee County accommodated Whitaker's permanent restrictions by transferring her to a position as an Energy Assistance Specialist. Def. PFOF ¶ 4. In September of 2008, Whitaker sought, was offered, and commenced employment in another position with Milwaukee County, that of an Economic Support Specialist. Def. PFOF ¶¶ 5-6.

    1.2 Wisconsin's Act 15 and its Implementation

On May 29, 2009, Wisconsin Act 15 ("Act 15") became law in Wisconsin. Def. PFOF ¶ 7. Pursuant to Act 15, the State of Wisconsin assumed responsibility for the administration of income maintenance programs in Milwaukee County. More specifically, pursuant to part of Act 15, Wis. Stat. § 49.825(2)(a), entitled "Department administration in Milwaukee County," the State created a unit of State government to administer several welfare programs in Milwaukee County. Def. PFOF ¶¶ 8-11. The State created the Milwaukee County Enrollment Services ("MilES") unit, the unit to which Whitaker was assigned. Plaintiff's Proposed Finding of Fact ("Pl. PFOF") (Dockets #40, #45) ¶ 29, ¶ 36.

Wis. Stat. § 49.825(3) set forth the division of responsibility for employment-related functions between the State and Milwaukee County.

Def. PFOF ¶ 12. These provisions applied to Whitaker beginning on May 29, 2009, and throughout the remainder of her employment as an Economic Support Specialist. Def. PFOF ¶ 15.

Milwaukee County provided the staff to operate the MilES unit, and thus, even after the implementation of Act 15, Whitaker remained an employee of Milwaukee County. Pl. PFOF ¶ 30, ¶ 23. Milwaukee County compensated Whitaker, and Whitaker received benefits from and through Milwaukee County. Pl. PFOF ¶ 24. Whitaker worked at a facility owned and operated by Milwaukee County, wore a badge identifying her as an employee of Milwaukee County, and remained a member of Milwaukee County's union with corresponding seniority rights. Pl. PFOF ¶ 25.

Wisconsin DHS has authority to "hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, discipline, and adjust grievances with respect to, and state supervisory employees may supervise, county employees performing services under this section for the unit." Def. PFOF ¶¶ 12-13. Wis. Stat. § 49.825(3)(b)(4) states that Wisconsin DHS "may unilaterally resolve" disputes between the Wisconsin DHS and county employee unions regarding hours or conditions of employment. Def. PFOF ¶ 14. Wisconsin DHS is responsible for maintaining the personnel and medical files for MilES employees. Def. PFOF ¶ 40.

### 1.3 Whitaker's Leave and Accommodation Requests

Subsequent to Act 15 taking effect, Whitaker's supervisors, including Vanessa Robertson ("Robertson") and Mario Reed ("Reed") were Wisconsin DHS employees. Def. PFOF ¶ 16. Whitaker's work accommodation requests and Family and Medical Leave Act ("FMLA") leave requests were approved by Wisconsin DHS employees. Def. PFOF ¶¶ 17-19. David Lopez approved

a work accommodation request in January 2010; Nicole Teasley ("Teasley") approved a request for intermittent FMLA leave in June 2010, and a request for continuous FMLA leave in August 2010. Def. PFOF ¶¶ 17-19. Whitaker's absence from work continued and, in a letter dated October 25, 2010, Teasley informed Whitaker that her FMLA leave was exhausted as of October 18, 2010, but that she was approved for a leave of absence through November 5, 2010. Def. PFOF ¶ 20. In a letter dated October 25, 2010, Robertson informed Whitaker that she was expected to return to work on November 8, 2010. Def. PFOF ¶ 21.

### 1.4 Whitaker's Termination

Whitaker did not return to work on November 8, 2010. Def. PFOF ¶ 29. In a letter dated November 15, 2010, Robertson informed Whitaker that Wisconsin DHS intended to medically separate her from employment. Def. PFOF ¶ 30. The letter stated "[w]hen an employee has exhausted all leave entitlements and remains unable to work, the Department of Health Services is granted authority under s. 230.37, Wis. Stats., to medically separate the employee from state service.…termination of your employment with the State of Wisconsin may be necessary." Def. PFOF ¶ 31. The letter set a November 18, 2010 meeting "to discuss this pending action." Def. PFOF ¶ 32. Milwaukee County was copied on and received a copy of this letter. Pl. PFOF ¶ 78.

Whitaker, a union representative, Teasley, and Robertson attended a meeting on November 18, 2010; at this meeting Whitaker was informed of her termination. Def. PFOF ¶¶ 33-34. Eli Soto ("Soto"), a Wisconsin DHS employee, mailed a letter dated November 30, 2010, to Whitaker informing her that her employment with Wisconsin DHS was "being terminated

effective November 30, 2010 for medical reasons." Def. PFOF ¶ 35. Milwaukee County was copied on and received a copy of this letter. Pl. PFOF ¶ 85.

### 1.5 Whitaker's Equal Employment Opportunity Commission Charge

On November 3, 2010, Whitaker filed a charge with the Equal Employment Opportunity Commission ("EEOC") naming Milwaukee County DHS and Wisconsin DHS as discriminating entities. Def. PFOF ¶¶ 22-23. Whitaker's charge stated "[t]he work I do is under the supervision of the State of WI Department of Health Services." Def. PFOF ¶ 24. The charge also stated "I believe I have been discharged on the basis of my disability," named "10-25-2010" as the earliest and latest dates of discrimination, and did not indicate that there was a "continuing action." Def. PFOF ¶¶ 24-27.

On December 22, 2010, Attorney Lara M. Herman of the Office of Legal Counsel, Wisconsin DHS, sent a position statement with attached exhibits to the EEOC. Def. PFOF ¶ 38. The position statement indicated that the State took over Milwaukee County Income Maintenance programs pursuant to Act 15, and that the State assumed full responsibility of the activities on January 1, 2010, including the authority to hire, to fire, and to accommodate employees under the Americans with Disabilities Act ("ADA"). Def. PFOF ¶¶ 39-42. On July 26, 2012, the EEOC issued a "right to sue" letter to Whitaker indicating that the EEOC found reasonable cause to believe that the Wisconsin DHS engaged in discriminatory behavior. Def. PFOF ¶¶ 43-44. On May 8, 2013 the EEOC issued a "Dismissal and Notice of Rights" letter to Whitaker stating that the EEOC is "unable to conclude that the information obtained establishes violations of the statutes" regarding

Milwaukee County DHS and informing her of her right to sue within ninety days. Def. PFOF ¶ 53.

### 1.6 Whitaker's Federal Lawsuit

On October 3, 2012, Whitaker initiated this lawsuit in the Eastern District of Wisconsin, naming Milwaukee County DHS and Wisconsin DHS as defendants. (Docket #1). On December 26, 2012, Wisconsin DHS moved to dismiss on grounds of Eleventh Amendment immunity from suit. (Docket #11). On January 30, 2012, this court granted the motion and dismissed Wisconsin DHS from the action. (Docket #15). On March 28, 2013, the parties stipulated that Whitaker may file an amended complaint; defendant Milwaukee County moved for summary judgment. (Dockets #26, #33). On November 6, 2013, Whitaker filed an expedited motion for leave to file a second amended complaint. (Docket #50).

## 2. Whitaker's Expedited Motion for Leave to Amend

### 2.1 Legal Standard

Under Federal Rule of Civil Procedure 15, a court should "freely" grant leave to amend pleadings "when justice so requires." Fed. R. Civ. Pro. 15 (a)(2). However, a trial court has "broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Tribble v. Evangelides*, 670 F.3d 753, 761 (7th Cir. 2012) (citations omitted).

### 2.2 Analysis

Whitaker seeks to amend her complaint to rejoin Wisconsin DHS as a defendant and to add a cause of action asserting a violation of the Rehabilitation Act of 1973. Motion to Amend (Docket #50) at 2. Whitaker

argues that the parties would not be prejudiced by granting leave to amend, that the operative facts in the second amendment complaint are the same as those in the amended complaint, and that amendment serves the interests of justice. Motion to Amend at 2-3. Milwaukee County opposes Whitaker's motion. Milwaukee County asserts that granting Whitaker's motion would unduly delay the proceedings and prejudice Milwaukee County. Response to Motion to Amend (Docket #51) at 2.

The court finds that Whitaker's motion was filed much too late in the proceedings and that granting the motion would prejudice Milwaukee County. First, with regard to the timing of the motion, the court notes that this matter has been pending for over a year, and that its scheduled trial date is fast-approaching. The court dismissed Wisconsin DHS from this matter early in the proceedings, prior to plaintiff counsel's appearance and the filing of Whitaker's amended complaint. (Dockets #15, #25, #28). Whitaker's motion points out that the operative facts of the proposed second amended complaint are the same as those of the amended complaint; which is to say, plaintiff knew all the operative facts before she filed the amended complaint, and the impetus to amend again is not newly-discovered evidence, but belatedly-identified claims. Plaintiff offers no explanation for the tardiness. Furthermore, this matter is scheduled for jury trial to commence in less than three weeks, on November 25, 2013; the court scheduled the matter on February 26, 2013, and the parties have had notice since that time. (Docket #22). Permitting amendment would necessarily interfere with this long-established trial schedule.

Additionally, the court finds that it would prejudice Milwaukee County to permit Whitaker to file a second amended complaint raising new

theories of liability and adding a new party. Milwaukee County has answered, engaged in discovery, and fully briefed a motion for summary judgment predicated upon the amended complaint. If the court granted leave to amend again, Milwaukee County would have to reassess its entire strategy in this matter, laying waste to significant efforts made in its defense. The court concludes that permitting Whitaker to amend her complaint literally on the eve of trial would cause undue delay in the adjudication of this matter, and would prejudice Milwaukee County. Accordingly, Whitaker's motion for leave to file a second amended complaint will be denied; Whitaker's amended complaint (Docket #28) remains the operative complaint for the balance of this Order.

3. Milwaukee County's Motion for Summary Judgment

    3.1    The Scope of Whitaker's Lawsuit

The first point of analysis requires the court to identify the claims properly included in Whitaker's federal lawsuit. Whitaker's amended complaint alleges that Milwaukee County violated the ADA by four acts or omissions: first, by "denying an extended medical leave of absence and/or time off of work"; second, by denying her transfer to another position or positions; third, by failing to accommodate her disability; and fourth by terminating her employment. Am. Compl. at 20. Milwaukee County argues that the scope of Whitaker's lawsuit must be limited to her claim of discriminatory discharge because Whitaker did not raise the other claims in her EEOC charge. Motion Brief (Docket #34) at 6. Whitaker does not dispute that she did not raise all of these claims with the EEOC, but argues that the allegations in her amended complaint fall within the scope of her EEOC charge. Response (Docket #39) at 29-30.

Before a plaintiff may file a federal lawsuit alleging a violation of the ADA, the plaintiff must file a charge with the EEOC. As the Seventh Circuit explained in *Conley v. Village of Bedford Park*, "A plaintiff may pursue a claim not explicitly included in an EEOC complaint only if her allegations fall within the scope of the charges contained in the EEOC complaint. To determine whether the allegations in the complaint fall within the scope of the earlier EEOC charge, we must look at whether the allegations are like or reasonably related to those contained in the charge." *Conley v. Village of Bedford Park*, 215 F.3d 703, 710 (7th Cir. 2000) (citations, internal quotations omitted). Allegations in a civil complaint and an EEOC charge are reasonably related if they "describe the *same conduct* and implicate the *same individuals.*" *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (emphasis in original).

The court concludes that Whitaker's claims of liability predicated on a denial of an extended medical leave, denial of transfer to another position, and failure to accommodate are not "like or reasonably related to" the wrongful termination action articulated in her EEOC charge. Whitaker's EEOC charge states "I have been out on a medical leave of absence since September 1, 2010. In a letter dated October 25, 2010 I was notified by Vanessa Robertson, Deputy Director of MILES, that I would be terminated if I failed to return to work by November 8, 2010. I am unable to return at that time due to medical reasons." (Docket #37-3). The charge gives October 25, 2010, as the earliest and latest dates of discrimination; the box indicating a continuing action is unchecked. Whitaker's description of the discriminatory conduct does not mention any denied requests for extended leave, requests to transfer to another position, or requests for

accommodation. The EEOC charge alleges only one basis for liability: the October 25, 2010 letter notifying Whitaker that she must return to work or face termination.

It is established in the Seventh Circuit that a claim for failure to accommodate under the ADA is separate and distinct from a claim of wrongful termination. In *Green v. National Steel Corp., Midwest Div.*, the Seventh Circuit provided analysis in a case with a similarly narrow EEOC charge followed by a broader civil complaint. There, defendant National Steel Corporation, Midwest Division ("National") suspended and terminated its employee, plaintiff Cynthia Green ("Green"). 197 F.3d 894, 896-97 (7th Cir. 1999). Green filed a charge with the EEOC, alleging that she was terminated because of her disability. *Id.* at 897. National responded, the EEOC investigated, and ultimately the EEOC dismissed the action and issued a Notice of Right to Sue. *Id.* Green then filed suit against National, alleging that National violated the ADA in terminating her employment and in failing to accommodate her disability, among other claims. *Id.* The District Court for the Northern District of Indiana granted National's motion for summary judgment on the failure to accommodate claim, and the Seventh Circuit affirmed. *Id.* at 898. The Seventh Circuit compared the EEOC charge to the civil complaint, noting that Green's civil complaint articulated several accommodations that National allegedly denied Green, but Green had not included any of these allegations in her EEOC charge. *Id.* As the Seventh Circuit explained:

> a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA. In fact, the two types of claims are analyzed differently under the law. Therefore, they are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim

>
> to develop from an investigation into a claim that an employee was terminated because of a disability.

*Id.* (citations omitted).

Whitaker's civil complaint and EEOC charge are similar to Green's. Following the reasoning of *Green* and *Conley*, the court concludes that Whitaker did not articulate claims for failure to accommodate, denial of extended leave of absence, and denial of transfer in her EEOC charge, that those three claims are "analyzed differently under the law," and that they are not "like or reasonably related to one another." Accordingly, the scope of Whitaker's federal lawsuit must be limited to the exhausted claim of wrongful termination.

### 3.2  Whitaker's Joint Employer Theory of Liability

Milwaukee County's motion for summary judgment argues that it is entitled to summary judgment on Whitaker's complaint because no reasonable trier of fact could conclude that Milwaukee County was involved in the decision to terminate her employment. Motion Brief at 11. Whitaker's argument in response to Milwaukee County's motion for summary judgment hinges on her theory that Milwaukee County is liable for her allegedly unlawful termination because Milwaukee County and Wisconsin DHS were joint employers. Response at 1. In its Reply brief, Milwaukee County argues both that Whitaker's joint employer theory fails as a matter of procedure and merit. Reply (Docket #44) at 3.

Whitaker's joint employer theory is not stated in her amended complaint. Instead, the amended complaint articulates an agency theory follows: "By assuming the management responsibilities of [Milwaukee County's] Income Maintenance programs, [Wisconsin DHS] became an agent of [Milwaukee County]." Am. Compl. at 8 ¶ 49. In its motion for summary

judgment, Milwaukee County confronts this allegation, arguing that the relationship between Milwaukee County and Wisconsin DHS was "mandated by Wisconsin state law. For this reason the Plaintiff can present no evidence [...] that the Wisconsin DHS was an 'agent' of Milwaukee County, as the amended complaint alleges." Motion Brief at 10 n.1. In her responsive briefing, Whitaker does not rebut Milwaukee's argument, but instead offers a new theory: that Milwaukee County and Wisconsin DHS were joint employers, and that therefore Milwaukee County "is liable for [Wisconsin] DHS's unlawful actions, and vice versa." Response at 17. Milwaukee County argues that Whitaker may not raise a new theory of liability in opposition to its motion for summary judgment. Reply at 3. Milwaukee County argues that it was prejudiced by this change of course because it denied Milwaukee County adequate notice of the nature of Whitaker's claims. Reply at 4.

It is well-established in this Circuit that a party "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Shanhan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). The Seventh Circuit has affirmed district courts that refused to consider claims raised in opposition briefing. For example, in *Anderson v. Donahoe*, plaintiff's *pro se* complaint asserted claims for disability discrimination and failure to accommodate, but his two subsequent amended complaints failed to reassert those claims. 699 F.3d 989, 997 (7th Cir. 2012). Anderson sought to raise the claims in opposition to defendant's motion for summary judgment; the district court deemed the claims "forfeited" and granted the defendant's motion for summary judgment. *Id.* at 994. The Seventh Circuit affirmed, explaining that by the time Anderson filed his brief

in opposition, defendant had not received fair notice of Anderson's claim, as required by federal pleading rules. *Id.* at 997 (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).

Similarly, a party may not raise new theories of liability in opposition briefing to a motion for summary judgment. In *Abuelyaman v. Ill. State Univ.*, Eltayeb Abuelyaman ("Abuelyaman") filed a complaint alleging that his employer, Illinois State University ("Illinois State"), refused to renew his contract due to his race, national origin, and religion, and in retaliation for three specific discrimination complaints he lodged. 667 F.3d 800, 803, 806 (7th Cir. 2011). Illinois State filed for summary judgment and, in his opposition briefing, Abuelyaman asserted a new theory in support of his retaliation claim. *Id.* at 806. The district court rejected this theory and granted Illinois State's motion for summary judgment on this theory due, in part, to the fact that Abuelyaman raised it late. *Id.* The Seventh Circuit affirmed on this point, explaining that, "It is well settled that a plaintiff may not advance a new argument in response to a summary judgment motion." *Id.* at 814 (*citing Andree v. Ashland Cnty.*, 818 F.2d 1306, 1314 n.11 (7th Cir. 1987)). The court held that the district court did not err in refusing to consider Abuelyaman's late-raised argument. *Id. See also Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) (holding that plaintiff "failed to present to the trial judge" a claim of retaliation, because the plaintiff raised it for the first time in opposition to defendants' motion for summary judgment).

With these authorities in mind, the court can only conclude that Whitaker's joint employer theory of liability was not timely raised. The allegation that Milwaukee County and Wisconsin DHS are joint employers does not appear in Whitaker's amended complaint, and, therefore,

Milwaukee County did not have adequate notice that Whitaker's claim is predicated on this theory of liability. Therefore, the court will not consider this argument in its analysis of Milwaukee County's motion for summary judgment.

### 3.3 Milwaukee County's Motion for Summary Judgment

Milwaukee County argues that it is entitled to summary judgment because it was not involved in the allegedly discriminatory decision to terminate Whitaker's employment. Motion Brief at 10. The foundation of Milwaukee County's argument is an intuitive principle: a qualified individual with a disability who suffers an adverse employment action as a result of her disability has a cause of action under the ADA, but only against entities properly liable for that discrimination. Milwaukee County argues it is not a proper defendant because it was not involved in the decision to terminate Whitaker. Motion Brief at 11.

The general standard for assessing motions for summary judgment applies, namely: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Plaintiff's amended complaint pled agency as her theory of liability, stating: "By assuming the management responsibilities of [Milwaukee County's] Income Maintenance programs, [Wisconsin DHS] became an agent

of [Milwaukee County]." Am. Compl. at 8 ¶ 49. Unfortunately for Whitaker, the undisputed facts show that Wisconsin DHS was not Milwaukee County's agent under Wisconsin law. "To establish agency under Wisconsin law, a principal must: (1) manifest an express or implied intent to have another party act for him; (2) retain the right to control the details of the other party's work; and (3) operate in a distinct occupation or business from the other party." *St. Paul Mercury Ins. Co. v. The Viking Corp.*, 539 F.3d 623, 626 (7th Cir. 2008) (*citing James W. Thomas Constr. Co. v. Madison*, 255 N.W.2d 551, 554 (Wis. 1977); *Peabody Seating Co. v. Jim Cullen, Inc.*, 201 N.W.2d 546, 549 (Wis. 1972)). The undisputed facts show that Whitaker cannot prove the second prong of this agency test. As explained in sections 1.2, 1.3, and 1.4 of this Order, *supra*, the State created the unit to which Whitaker was assigned, and had authority to supervise and discharge employees of the unit. While Whitaker remained a Milwaukee County employee in name and in some other minor respects, Wisconsin DHS undisputedly had the authority to terminate Whitaker. Milwaukee County did not "retain the right to control the details" of Wisconsin DHS's decision to terminate Whitaker's employment. The only evidence in the record that Milwaukee County even knew of the Wisconsin DHS's decision to terminate Whitaker is that Milwaukee County was copied on the written letters from Robertson and Soto notifying Whitaker of her termination. All of the individuals involved in Whitaker's supervision and termination (Robertson, Reed, Lopez, Teasley, Soto) were Wisconsin DHS employees. In sum, the record does not support a finding that Wisconsin DHS was acting as Milwaukee County's agent because nothing in the record shows that Milwaukee County retained any

control over Wisconsin DHS as it supervised and ultimately terminated Whitaker's employment.

There are no genuine disputes as to any material facts in this case. The undisputed facts before the court show that Milwaukee County did not act with regard to Whitaker's termination; rather, the facts demonstrate the direct opposite, namely that Milwaukee County had no power to act. It follows that Whitaker may not seek relief from Milwaukee County under the ADA. Milwaukee County has met its burden as movant and "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Accordingly,

IT IS ORDERED that Whitaker's expedited motion for leave to file a second amended complaint (Docket #50) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that Milwaukee County's motion for summary judgment (Docket #33) be and the same is hereby GRANTED and this action be and the same is hereby DISMISSED on its merits together with costs as taxed by the Clerk of the Court.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 12th day of November, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge